RICHARD J. LYNCH, PROSECUTOR, v. TOWN OF WEST HOBOKEN AND CLINTON ASPHALT COMPANY, DEFENDANTS.

Decided July 21, 1923.

**Lowest Bidders—No Award of Municipal Contract—Rights of Bidder Therein.**

On *certiorari.*

Before Justices PARKER, BERGEN and MINTURN.

For the prosecutor, *John T. Gough.*

For the defendants, *J. Emil Walscheid.*

PER CURIAM.

The writ of *certiorari* allowed in this case brings up all "proceedings, resolutions, ordinances, plans and specifications, proposal for bids, bids, agreements and form of agreements as to repairing and otherwise improving Clinton avenue, in the town of West Hoboken. The record shows all the proceedings, including the bids which show that the Clinton Asphalt Company was the lowest bidder.

The first point to be considered is a motion to dismiss the Clinton company as a party, upon the ground that as no contract had been awarded they had no property right to be affected. The record shows that when the Clinton company tendered their bid they gave a bond, with sureties, conditioned to execute the contract, if awarded;" therefore that company is a proper party, since it is to their interest to have the contract executed and a judgment setting aside the proceedings and prohibiting the awarding of the contract would be improper, unless that company had its day in court. The motion to dismiss the writ as to the company is denied.

In support of the writ it is urged that the specifications vary from the instructions of the town of West Hoboken to its engineer, and the ordinance for the improvement, and

advertisement for bids. The town instructed the engineer to prepare the plans and specifications for the improvement "with a sheet of asphalt or granite block pavement on a concrete foundation." We do not think it necessary that the ordinance and the advertisement for bids correspond with the instructions given to the engineer, since the instructions form no part of the ordinance, or of the plans. The ordinance would not be void simply because the town changed its mind before the ordinance was adopted as to the character of the work. The principal objection is that the specifications do not cover or provide for granite blocks; but since none was used, except about four hundred and seventy-five square yards in front of a car barn, this claim of the prosecutor is in effect that the specifications are such a departure from the instruction to the engineer as to render the ordinance and notices to contractors fatal. It is not erroneous for a public body to ask for bids for sheet asphalt *or* granite block, when both are to be used, and all the bidders understood that both were included, and are afforded an opportunity to bid on both, and knew the relative quantities of both, since all bidders in such a situation are on an equality.

The next point made is that the specifications are indefinite as to the amount of material to be supplied for the binder and the concrete. The contract is intended to relay and repair an improved street, already laid to grade, and the plan shows the present centre line of the street; and the proposed centre line when improved; and the proposals show that the work consists in part of taking up as much of the old foundation as may be required, and excavating the road where the old foundation was not of satisfactory quality and that no existing foundation should be broken until it has been examined and approved by the engineer; and that concrete foundations shall be eight inches thick, unless otherwise directed. We do not think the materials to be supplied are indefinite, but that the plan and specifications, with an examination by the bidder of the ground, such as he was required to make, removed any ground of uncertainty or indefiniteness.

27

The next point made is that the bids were collusive. There were five bids varying from $252,000 by the Clinton company to $279,000 by the Curtin Brothers, these sums being the highest and the lowest.

The highest bidder testified that he did not go over the line of improvement and that all he did was to get prices for asphalt and binder from the Clinton company, that Caponi, another bidder, got the price of the asphalt and binder from the Clinton company. Hornung, another bidder, testified that his samples of asphalt were that of the Clinton company; and so with the other bidder. They all expected to buy the asphalt from the Clinton company if they obtained the contract, and the prices they bid were the same as that bid by the Clinton company, with profit added. We do not think these facts sufficient to justify a finding that there was collusion, because the difference in the bids turns on other matters than the asphalt, and there is no doubt under the evidence that the Clinton company, because of its facilities, can do the work cheaper than the other bidders. The material which caused the difference in the bids was the price of the concrete, and that particular material the Clinton company was able to furnish cheaper than the other bidders.

The next point made is that the amount of the bids, with the prices, were not properly entered in the minutes of the council. We do not see how this fact would affect the right of the Clinton company to have the contract awarded. The evidence shows that the bids and prices were entered upon a paper used to determine which was the lowest bidder, and the only error complained of is that the clerk did not at once enter these figures in the minutes. We do not think this omission ought to deprive the Clinton company of its contract.

It is finally urged that the ordinance appropriating $300,000 for the improvement includes illegal charges to be paid to the engineer. We find no proof of this in the record, and if there was it would not destroy the right of the Clinton company to have its contract executed. Whatever sum the town might appropriate it would be held to strict accounta-

bility·for the use of the money so appropriated and it would have no right to illegally disburse it.

The proceedings should be affirmed.